AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Cellular telephone, more fully described in Attachment A

)
)
)
)
)
)

Case No.   MJ20-037

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Cellular telephone, as more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) & 846 | Distribution of Controlled Substances and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

✓   See Affidavit of DEA Special Agent Geoffrey Provenzale, continued on the attached sheet.

☑ Delayed notice of  90  days (give exact ending date if more than 30 days:   04/28/2020   is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Geoffrey Provenzale, DEA Special Agent

*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   1/29/20

*Judge's signature*

City and state:  Seattle, Washington

Brian A. Tsuchida, United States Chief Magistrate Judge

*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON          )
                             )
COUNTY OF KING               )

I, Geoffrey Provenzale, a Special Agent with the Drug Enforcement Administration, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since April 2015.  I am currently assigned to the Seattle Field Division.  In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses.  I have received specialized training in the enforcement and investigation of the Controlled Substance Act.  I have received over 620 hours of classroom training including but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances.

2.      In my role as a Special Agent for the Drug Enforcement Administration, I have negotiated for and purchased narcotics acting in an undercover capacity.  I have participated in narcotics investigations (i.e. heroin, fentanyl, cocaine, marijuana, and methamphetamine) that have resulted in the arrest of individuals and the seizure of narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets.  I have been involved in the service of search warrants as part of these investigations.  As a result of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances.  I am also familiar with the various methods of packaging, delivering,

1  transferring, and laundering drug proceeds.  Additionally, through my training and

2  experience, I can identify illegal drugs by sight, odor, and texture.

3    3.    I have also worked on drug investigations involving the use of court-

4  authorized wiretaps under Title III.  In that capacity, I have had the opportunity to

5  monitor, listen to, and review transcripts and line sheets in both English and Spanish

6  (prepared by linguists) documenting the content of hundreds of intercepted conversations

7  involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by

8  persons who used some form of code to thwart law enforcement.  I have also interviewed

9  defendants at the time of their arrest and have debriefed, spoken with, and/or interviewed

10  numerous drug dealers or confidential sources (informants) at proffer and safety valve

11  interviews who were experienced in speaking in coded conversation over the telephone.

12  In many of these interviews and debriefings, I was able to speak with these drug

13  traffickers about specific conversations in which they were intercepted pursuant to

14  electronic surveillance.  From these interviews, and also from discussions with other

15  experienced investigators, I have gained knowledge regarding the various methods,

16  techniques, codes, and/or jargon used by drug traffickers in the course of their criminal

17  activities, including their use of firearms to protect their narcotics related activities and

18  use of cellular telephones as a means to facilitate communications while avoiding law

19  enforcement scrutiny.

20    4.    I have written affidavits in support of court authorized federal warrants and

21  orders in the Western District of Washington for T-III interceptions, GPS tracking of

22  telephones, search warrants, and tracking of vehicles.  Additionally, I have testified in

23  grand jury proceedings, written investigative reports, and conducted and participated in

24  numerous interviews of drug traffickers with various roles in drug organizations, which

25  has provided me with a greater understanding of the methods by which drug trafficking

26  organizations operate.

27  //

28  //

Affidavit of SA Provenzale - 2
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## PURPOSE OF AFFIDAVIT

5.      This affidavit is being submitted in support of an application for a search warrant to search the **Target Telephone** also referred to herein as **TT29**.[1]  The **Target Telephone** was seized in connection with the interdiction of a vehicle that contained approximately 1,974 gross grams of counterfeit "M30" pills believed to contain fentanyl. There is probable cause to believe the **Target Telephone** contains evidence of criminal offenses connected with this seizure.

6.      The **Target Telephone** is a cellular telephone, more particularly described in Attachment A, which is incorporated herein by reference.

a.      Black LG cellular phone, with "LG" and "cricket" marked on the back of the phone.  Additionally the phone has a white label on the back of it that lists an IMEI of 356865092475363.  The phone is currently in the custody of DEA Seattle.

7.      I seek the Court's permission to search the **Target Telephone** for evidence of violations of Title 21, United States Code Sections 841(a)(1) and 846, as further described in Attachment B, which is also incorporated herein by reference.

8.      Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for the **Target Telephone**, I have not included every fact known to me concerning this investigation.  Rather, I have set forth only the facts that I believe are necessary for a fair determination of probable cause and to show that there is probable cause to issue the requested warrant.

9.      This affidavit describes intercepted Spanish-language communications. DEA linguists have translated those communications into English. Except where otherwise indicated, the quotations of communications below are the English translations of the original Spanish communications.

---

[1] **TT29** was a phone believed to be utilized by a suspected courier.  Due to the circumstances of the seizure described herein, I believe the phone DEA has in its possession currently is **TT29**.  However, without any further identifiers for the phone it is impossible to be certain.  I will refer to the **Target Telephone** as **TT29** in this affidavit to avoid confusion.

Affidavit of SA Provenzale - 3
USAO #2019R00980

1    10.    I believe there is probable cause to conclude that Jorge Alberto Ramos
2 (along with one or more other persons) participated in the trafficking of controlled
3 substances, and used the **Target Telephone** in connection with those offenses.

4                          **SOURCES OF INFORMATION**

5    11.    I have obtained the facts set forth in this affidavit through my personal
6 participation in the investigation described below; from oral and written reports of other
7 law enforcement officers; and from records, documents and other evidence obtained
8 during this investigation.  I have obtained and read official reports prepared by law
9 enforcement officers participating in this investigation and in other investigations by the
10 DEA.  Insofar as I have included event times in this affidavit, those event times are
11 approximate.

12                          **SUMMARY OF INVESTIGATION**

13    12.    The DEA is investigating a drug trafficking organization (DTO) operating
14 in the Western District of Washington that distributes narcotics, including heroin,
15 methamphetamine, and fentanyl.  Investigators believe Delmer Velasquez-Licona and
16 Gustavo Sandoval-Agurcia are re-distributors for the DTO.  Investigators also believe
17 Rodrigo Alvarez-Quinonez[2] is one of the sources of supply for the DTO.

18    13.    On November 26, 2019, the Honorable U.S. District Court Judge Ricardo
19 S. Martinez signed an order authorizing the interception of wire and electronic
20 communications over 206-476-0126/TT16.  Interception of TT16 began on or about
21 November 26, 2019.  On December 6, 2019, the Honorable U.S. District Court Judge
22 Ricardo S. Martinez, signed an order authorizing the interception of the wire and
23 electronic communications to and from 206-231-8342/TT18.  Both phones are believed
24 to be utilized by Velasquez-Licona.  On December 6, 2019, DEA terminated the
25 interception of TT16.

26

27 _____

28 [2]In prior affidavits for this investigation, Alvarez-Quinonez was referred to only as "UM3287" as he had not been
fully identified.  Recently, as described herein, UM3287 was identified as Alvarez-Quinonez.

Affidavit of SA Provenzale - 4                                   UNITED STATES ATTORNEY
USAO #2019R00980                                                 700 STEWART STREET, SUITE 5220
                                                                 SEATTLE, WASHINGTON 98101
                                                                 (206) 553-7970

14.     On December 20, 2019, investigators received information from T-Mobile that the phone number (206-231-8342) for TT18 had changed to 206-531-9979 but the International Mobile Subscriber Identity (IMSI) 310260079535163 had remained the same.  T-Mobile continued to honor the T-III order for TT18.  After December 20, 2019, we continued to intercept communications where Velasquez-Licona utilized both wire and text messages to facilitate the trafficking of narcotics until the order expired on January 4, 2020.

15.     On January 9, 2020, the Honorable U.S. District Court Judge James L. Robart signed an order authorizing the continued interception of the wire and electronic communications to and from 206-531-9979/TT18, and authorizing the initial interception of the wire and electronic communications to and from 425-496-3287/TT19 and 206-929-8743/TT23.  TT19 is utilized by Alvarez-Quinonez.  TT23 is utilized by Sandoval-Agurcia.  During the interception periods for this investigation, we have become aware of multiple vehicles and phones utilized by the DTO to facilitate narcotics trafficking.

16.     On January 13, 2020, the Honorable Stanley S. Boone, United States Magistrate Judge for the Eastern District of California, signed an order authorizing real-time GPS tracking for one target telephone: 559-977-1040 (**TT29**).  The phone is believed to have been utilized by Jorge Alberto Ramos, a suspected courier of narcotics for Alvarez-Quinonez.

## PROBABLE CAUSE FOR SEARCH WARRANT

Probable Cause for TT29.

17.     On January 14, 2020, electronic tracking indicated that **TT29** was "pinging" in the area of 2465 Orange Avenue Selma, California.  Investigators coordinated with DEA Fresno to conduct surveillance of associated vehicles at the aforementioned address.  On the same date, at approximately 11:17 a.m., DEA Fresno informed DEA Seattle that multiple vehicles were parked near the residence, including a Jeep Grand Cherokee (hereinafter Jeep), bearing California license plate 8GEC621.

Affidavit of SA Provenzale - 5
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.     On January 17, 2020, at approximately 3:46 p.m. (session #345), TT19, utilized by Rodrigo Alvarez-Quinonez, placed an outgoing call to 559-977-1040/**TT29**, utilized by Jorge Alberto Ramos.[3]

19.     During the call, Alvarez-Quinonez told Ramos to go to the "L" to pick up ten right away.  Alvarez-Quinonez then told Ramos to get those ten and come back here and keep them safe.  Additionally, Alvarez-Quinonez told Ramos to go to the "sun" and grab other things so Ramos could come back here.  Finally, Alvarez-Quinonez told Ramos that on his way back, to stop by the "L" again and get another ten and bring them all at once.  Alvarez-Quinonez then told Ramos that Ramos had to go right now to pick them up. Ramos acknowledged and told Alvarez-Quinonez to message his other phone.

20.     Based on my training and experience, and knowledge of Alvarez-Quinonez being a narcotics trafficker based on prior seizures in this investigation, I believe this call was in reference to Alvarez-Quinonez directing Ramos to pick up narcotics at two different locations.  At the time of the aforementioned call, electronic surveillance tracking indicated TT19/Alvarez-Quinonez, and **TT29**/Ramos were "pinging" in Selma, California.

21.     At approximately 4:45 p.m., after the aforementioned phone call, tracking data for **TT29** indicated that the phone began to travel south, eventually arriving in the Los Angeles area of California.

22.     On January 17, 2020, at approximately 8:30 p.m., (session #351), Alvarez-Quinonez placed an outgoing call to 559-856-4205, also utilized by Ramos.[4]  During the call, Alvarez-Quinonez told Ramos to head back and put the things away, get some rest and head to "El Sol" (the sun).  Alvarez-Quinonez told Ramos that things in "El Sol"

---

[3] For simplicity in this affidavit, investigators will refer to TT19 as Alvarez-Quinonez and **TT29** as Ramos.  Based on the circumstances described herein, I believe I have identified Alvarez-Quinonez as the user of TT19 and Ramons as the user of **TT29** during the interdiction described below.
[4] Investigators requested DEA contracted linguists to conduct a voice comparison between the user of 559-977-1040/**TT29** (Ramos), and 559-856-4205.  Per voice comparison, DEA contracted linguists believe the same person uses both phones.  For simplicity in this affidavit, the user of **TT29** and the user of 559-856-4205 will be referred to as Ramos.

Affidavit of SA Provenzale - 6
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

should be ready.  Ramos stated that if everything was ready then it was doable.  Alvarez-Quinonez said everything would be ready because [unknown third parties] wanted it to urgently head up.  Alvarez-Quinonez stated that by the time Ramos was back at the "L," then there would be another ten; Ramos acknowledged.

23.     On the same date, at approximately 8:41 p.m., electronic tracking indicated that **TT29** was "pinging" southeast of Los Angeles, California.   Based on the context of the aforementioned call, and location tracking of **TT29**, I believe the "L" was referring to Los Angeles.  After the aforementioned phone call, tracking for **TT29** indicated the phone travelled back to the Fresno/Selma area of California from Los Angeles, arriving in the Fresno/Selma area at approximately midnight on January 18, 2020.

24.     On January 18, 2020, at approximately 5:54 a.m., tracking data for **TT29** indicated that the phone began to travel south, eventually arriving in the Phoenix area of Arizona.

25.     On January 18, 2020, at approximately 3:17 p.m. (session #365), TT19 received an incoming call from 559-856-4205, utilized by Ramos.  During the call, Ramos asked Alvarez-Quinonez if there were seven of them; Alvarez-Quinonez stated yes.  Alvarez-Quinonez asked if Ramos was leaving now, and Ramos stated yes.

26.     On the same date, at approximately 3:23 p.m., electronic tracking indicated that **TT29** was "pinging" south of Tempe, Arizona.  Based on the context of the aforementioned call, and location tracking of **TT29**, I believe the "Sol" was referring to Phoenix.  After the aforementioned phone call, tracking for **TT29** indicated the phone travelled back to the Fresno/Selma area of  California from Phoenix, arriving in the Fresno/Selma area at approximately 1:23 a.m. on January 19, 2020

27.     On January 19, 2020, at approximately 11:15 a.m. (session #384), TT19 placed an outgoing call to 559-856-4205 utilized by Ramos. During the call, Alvarez-Quinonez stated "it's better for [Ramos] to wait for [Alvarez-Quinonez] so we can leave at dawn" and "I have all the money with the guys and I need to, to, to collect it."  Ramos acknowledged.  Alvarez-Quinonez asked "more or less what time at dawn?"  Ramos

Affidavit of SA Provenzale - 7
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

stated, “I would say that around four or five, right?” Alvarez-Quinonez responded, “Ah, that's fine, that's fine. So, it would be in the morning then. That's fine.” Ramos stated, “Yes, yes at five its fine.” Alvarez-Quinonez acknowledged. Ramos stated, “We would arrive there around eight, god willing.”

28. On the same date, in an effort to interdict the suspected drugs, DEA Seattle contacted multiple DEA offices in Oregon to establish surveillance on the northbound “pings” for TT19 and **TT29,** upon their departure from the Fresno/Selma area of California.

29. On January 20, 2020, at approximately 8:05 a.m., electronic surveillance indicated that TT19 and **TT29** were “pinging” north bound on Interstate-5, north of Sacramento, California in the vicinity of Williams, California.

30. On the same date, DEA Seattle coordinated with DEA Fresno to conduct surveillance on the previously identified residence associated with **TT29**, located at 2465 Orange Avenue Selma, California. At approximately 8:53 a.m., DEA Fresno observed at the aforementioned residence, that aforementioned Jeep was no longer parked near the residence.

31. At approximately 9:21 a.m., electronic tracking indicated that **TT29** was “pinging” northbound Interstate-5 near Proberta, California. At approximately 9:37 a.m., I stopped receiving electronic tracking data for **TT29**, indicating **TT29** had been powered down or had no signal.

32. On the same date, at approximately 12:54 p.m., DEA Medford observed a silver Jeep, bearing California license plate 8GEG621, northbound on Interstate-5, in the northern Medford, Oregon area. Surveillance was maintained on the Jeep. According to California Department of Motor Vehicles, Jeep Grand Cherokee, bearing California license plate 8GEG621, is registered to Consuelo Ramos-Maldonado with registered address 2465 Orange Avenue Selma, California. The Jeep originally observed, on January 14, 2020, at 2465 Orange Avenue Selma, California, was thought to be bearing license plate 8GEC621 as noted above. Due to the similar license plates, and the plate

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    observed by DEA Medford actually being registered to Ramos's suspected address, I

2    believe when the plate was first observed, DEA Fresno simply mistook the "G" for a "C."

3         33.    At approximately 1:09 p.m., electronic tracking indicated that TT19 was

4    "pinging" in the area where DEA Medford was observing the Jeep on Interstate-5.  At

5    approximately 1:19 p.m., I stopped receiving electronic tracking data for TT19,

6    indicating TT19 had been powered down or had no signal.  Based on my training and

7    experience, couriers at times will power down their phones when transporting narcotics

8    in an effort to thwart law enforcement tracking.

9         34.    At approximately 3:45 p.m., investigators observed the Jeep at a "Don

10   Pedro Mexican American Food" restaurant, located at 1570 Lancaster Dr. NE, Salem,

11   Oregon.  At approximately 4:17 p.m., an investigator identified two Hispanic males and

12   one female, later identified as Alvarez-Quinonez, Ramos, and Rodriguez-Ramos, exit the

13   restaurant, enter into the Jeep, and depart the area.  Surveillance was maintained on the

14   Jeep.

15        35.    At approximately 6:33 p.m., an interdiction stop was conducted of the Jeep

16   on northbound Interstate-5 between mile marker 73 and 74 in Chehalis, Washington. The

17   driver provided a California driver's license (N9280429) identifying him as Jorge Alberto

18   Ramos.  The front passenger provided a California driver's license (C3436294)

19   identifying her as Elvira Rodriguez-Ramos.  The back passenger provided two

20   international identifications identifying him as Rodrigo Alvarez-Quinonez.

21        36.    Shortly after the stop, Chehalis Police Department (CPD) arrived on scene

22   and utilized a narcotics detecting K-9, "Tiesto", on the exterior of the Jeep.  The K-9

23   alerted to the presence of a controlled substance near the bumper of the vehicle.  Based

24   on the DEA Seattle investigation to date, and the K-9 positive narcotics alerts, the vehicle

25   was seized and transported to a secure location.  Alvarez-Quinonez, Ramos, and

26   Rodriguez-Ramos were released pending further investigation.

27        37.    At approximately 7:58 p.m., a State of Washington telephonic search

28   warrant for the Jeep was obtained.  On the same date, investigators executed the search

Affidavit of SA Provenzale - 9
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

warrant and seized approximately 1,974 gross grams of counterfeit "M30" pills believed to contain fentanyl located in a natural void under the driver's seat of the Jeep.

38.     I also located what I believe is **TT29**, in the driver's side door of the Jeep. As noted, Ramos was the driver of the Jeep.  "Pings" for **TT29** have remained off since the stop, while "pings" for TT19 have stayed on indicating Alvarez-Quinonez is still utilizing the phone.  Additionally, since the stop, we have intercepted communications involving Alvarez-Quinonez using TT19.  It should be noted that whether the phone DEA has in its possession is TT29 or another phone utilized by Ramos (such as 559-856-4205) or Alvarez-Quinonez, I still believe the circumstances above indicate probable cause exists to search the phone.  Ramos has already shown he utilizes multiple phones.  I believe Alvarez-Quinonez does as well based on multiple intercepts in which he told the person with whom he was speaking to call another phone to contact Alvarez-Quinonez.  Due to these facts, and the seizure above, I believe probable cause exists to search the **Target Telephone**.

**KNOWLEDGE REGARDING NARCOTICS TRAFFICKERS & CELLPHONES**

39.     Based upon my training and experience, and conversations with, and training from, other officers and agents involved in narcotics investigations, I know the following about drug traffickers and their use of cell phones.

40.     Drug traffickers frequently make use of cellular telephones to arrange their drug transactions.  These telephones are frequently pre-paid cellular telephones.  Drug traffickers frequently provide little or no identifying information to the phone company.  What information is provided is frequently false.  Drug traffickers often discontinue the use of these cellular telephones on a frequent basis in order to thwart law enforcement efforts at detection.

41.     Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization.  Traffickers commonly maintain this information in books or papers as well as in cellular telephones and other electronic

Affidavit of SA Provenzale - 10
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   devices.  Traffickers often maintain cellular telephones for ready access to their clientele

2   and to maintain their ongoing narcotics business.  Traffickers frequently change their

3   cellular telephone numbers to avoid detection by law enforcement, and it is common for

4   traffickers to use more than one cellular telephone at any one time.

5       42.     Narcotics traffickers sometimes take or cause to be taken photographs

6   and/or video recordings of themselves, their associates, their property, and their illegal

7   product.

8       43.     A cellular telephone or mobile telephone is a handheld wireless device used

9   for voice communication through radio signals.  These telephones send signals through

10  networks of transmitter/receivers called "cells," enabling communication with other

11  cellular telephones or traditional "land line" telephones.  A cellular telephone usually

12  includes a "call log," which records the telephone number, date, and time of calls made to

13  and from the phone.

14      44.     In addition to enabling voice communications, cellular telephones'

15  capabilities include, but are not limited to: storing names and phone numbers in

16  electronic "address books"; sending, receiving, and storing text messages and email;

17  taking, sending, receiving, and storing still photographs and moving video; storing and

18  playing back audio files; storing dates, appointments, and other information on personal

19  calendars; and accessing and downloading information from the Internet.  Cellular

20  telephones may also include global positioning system ("GPS") technology for

21  determining the location of the device.

22      45.     Drug dealers use cellular telephones as a tool or instrumentality in

23  committing their criminal activity.  They use them to maintain contact with their

24  suppliers, distributors, and customers.  They prefer cellular telephones for many reasons.

25  First, cellular telephones can be purchased without the location and personal information

26  that land lines require.  Second, they can be easily carried to permit the user maximum

27  flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or

28  distribute drugs.  Third, they can be passed between members of a drug conspiracy to

Affidavit of SA Provenzale - 11
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  allow substitution when one member leaves the area temporarily.  I also know that it is

2  common for drug traffickers to retain in their possession phones that they previously

3  used, but have discontinued actively using, for their drug trafficking business.  Based on

4  my training and experience, the data maintained in a cellular telephone used by a drug

5  dealer is evidence of a crime or crimes.  This includes the following:

6       a.     The assigned number to the cellular telephone (known as the mobile

7  directory number or MDN), and the identifying telephone serial number (Electronic

8  Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

9  Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

10 important evidence because they reveal the service provider, allow us to obtain subscriber

11 information, and uniquely identify the telephone.  This information can be used to obtain

12 toll records, to identify contacts by this telephone with other cellular telephones used by

13 co-conspirators, to identify other telephones used by the same subscriber or purchased as

14 part of a package, and to confirm if the telephone was contacted by a cooperating source.

15      b.     The stored list of recent received, missed, and sent calls is important

16 evidence.  It identifies telephones recently in contact with the telephone user.  This is

17 valuable information in a drug investigation because it will identify telephones used by

18 other members of the organization, such as suppliers, distributors and customers, and it

19 confirms the date and time of contacts.  If the user is under surveillance, it identifies what

20 number he called during or around the time of a drug transaction or surveilled meeting.

21 Even if a contact involves a telephone user not part of the conspiracy, the information is

22 helpful (and thus is evidence) because it leads to friends and associates of the user who

23 can identify the user, help locate the user, and provide information about the user.

24 Identifying a defendant's law-abiding friends is often just as useful as identifying his

25 drug-trafficking associates.

26      c.     Stored text messages are important evidence, similar to stored numbers.

27 Agents can identify both drug associates, and friends of the user who likely have helpful

28 information about the user, his location, and his activities.

Affidavit of SA Provenzale - 12
USAO #2019R00980

1   d. Photographs on a cellular telephone are evidence because they help identify

2 the user, either through his or her own picture, or through pictures of friends, family, and

3 associates that can identify the user.  Pictures also identify associates likely to be

4 members of the drug trafficking organization.  Some drug dealers photograph groups of

5 associates, sometimes posing with weapons or drugs or showing identifiable gang signs.

6 Also, digital photos often have embedded "geocode" or GPS information embedded in

7 them.  Geocode information is typically the longitude and latitude where the photo was

8 taken.  Showing where the photo was taken can have evidentiary value.  This location

9 information is helpful because, for example, it can show where coconspirators meet,

10 where they travel, and where assets might be located.

11   e. Stored address records are important evidence because they show the user's

12 close associates and family members, and they contain names and nicknames connected

13 to phone numbers that can be used to identify suspects.

14   46. Based on my training and experience, I know it is common for narcotics

15 traffickers to utilize more than one phone.  At times, narcotics traffickers will utilize

16 separate phones to keep communications with sources of supply and downstream

17 customers separate.  I also know traffickers will often change phones for multiple reasons

18 which include attempts to frustrate law enforcement, and be able to quickly "drop" a

19 phone and still be able to communicate with members of their organization.  Moreover, I

20 know it is common for drug traffickers, no matter their level or role in an organization, to

21 possess and utilize multiple phones to conduct illicit narcotics activities.

22     **MANNER OF SEARCH & REQUEST FOR DELAYED NOTICE**

23   47. I intend to deliver the **Target Telephone** to a DEA telecommunications

24 specialist who will recover data from them using computer forensic best practices.

25   48. Law enforcement will ensure that only data physically located on the

26 **Target Telephone** will be recovered, in that the phones will be disabled from accessing a

27 mobile phone network or Wi-Fi access point.  This process will not capture data stored on

28 any other server, such as emails that have not been previously downloaded to the phones.

Affidavit of SA Provenzale - 13
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

49.     The examiner will extract from the **Target Telephone** the information identified in Attachment B.  The examiner will provide me either only authorized data, or data in a form in which these areas will be clearly delineated.  I intend to search the phones for the items that are described in Attachment B.

50.     If the forensic examiner is unable to extract data from the phones, I intend to instead manually search the phones by looking at the applicable sections of the actual phones for the items that are described in Attachment B.

51.     Accordingly, I am asking the Court for permission to delay notification of the execution of this search warrant.  Title 18, United States Code, Sections 3103a(b) and (c) provide that notice regarding execution of a search warrant may be delayed when the court finds reasonable cause to believe that such notification may have an adverse result, such as causing targets to flee from prosecution, destruction of or tampering with evidence, or seriously jeopardizing an investigation.  This authority also authorizes seizure of property without notice if the court finds that seizure is reasonably necessary.

52.     In this matter, immediate notification would seriously jeopardize this investigation.  These include target subjects "dropping" phones being currently tracked under court order; the flight of the target subjects (many of whom are foreign nationals); and the destruction of evidence.

53.     For the same reasons set forth in the preceding paragraphs, I request that the search warrant application, this affidavit, the search warrant, the search warrant return, the motion to seal filed herewith, the order sealing, and related materials be sealed to avoid jeopardizing the investigation.

## CONCLUSION

54.     In sum, I believe there is probable cause to believe that the **Target Telephone**, contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), and 846.  I seek authorization to search the Target Telephone for the items described in Attachment B.

Affidavit of SA Provenzale - 14
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**REQUEST FOR SEALING**

55.     Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, application, and tracking warrant, if prematurely disclosed to the public, could result in the target's flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against potential witnesses, and could otherwise seriously jeopardize the ongoing investigation.  Therefore, I request that this affidavit be sealed, and that notice required by Fed. R. Crim. P. 41(f) be delayed for up to ninety (90) days after expiration of the tracking warrant, or any extension thereof, in accordance with Title 18, United States Code 3103a(b).  If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.


GEOFFREY PROVENALE
Special Agent
Drug Enforcement Administration


    The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 29th day of January, 2020.


BRIAN A. TSUCHIDA
United States Chief Magistrate Judge

Affidavit of SA Provenzale - 15
USAO #2019R00980

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Attachment A**

## PROPERTY TO BE SEARCHED

The property to be searched comprises the following cellular telephone currently in the possession of the Drug Enforcement Administration:

> **The Target Telephone:** Black LG cellular phone with "LG" and "cricket" marked on the back of the phone.  Additionally the phone has a white label on the back of it that lists an IMEI of 356865092475363.  The phone is currently in the custody of DEA Seattle.

Attachment B

Items to be Searched for and Seized

This warrant authorizes the seizure of the following items or materials that may contain evidence of the commission of, the fruits of, and/or property which has been used as the means of committing the following crimes: distribution of, and possession with intent to distribute, controlled substances, and conspiracy to commit this offense, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), and 846:

a.  Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.  Stored list of recent received, sent, and missed calls;

c.  Stored contact information;

d.  Stored photographs, videos, or other recordings of narcotics, currency, firearms, or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

e.  Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wikr, Telegram, Signal, WhatsApp, and similar messaging applications.

The search warrant authorizes imaging or otherwise copying all data contained on the subject devices.  The search warrant also authorizes reasonable efforts to overcome any passcode protection of the subject devices.